LONCAR, Appellant, *v.* NATIONAL UNION FIRE INSUR-
ANCE CO., Respondent.

(No. 6,390.)

(Submitted January 14, 1929.   Decided February 8, 1929.)

[274 Pac. 844.]

144

*Messrs. Smith & Eickemeyer,* and *Mr. W. F. O'Leary,* for Appellant, submitted a brief; *Mr. H. R. Eickemeyer* and *Mr. O'Leary* argued the cause orally.

*Messrs. Freeman, Thelen & Freeman,* for Respondent, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to recover damages under a fire insurance policy. The policy was issued by the defendant and covered a dwelling-house, furniture, and a small barn belonging to plaintiff, all of which were destroyed by fire. The policy was issued for $3,000, which is the amount demanded in the complaint. The answer denied liability in any amount in excess of $500, which was alleged by the answer to be the cash value of the property. It also set up three affirmative defenses. The reply denies all of the affirmative allegations of the answer.

The trial was had before Hon. W. H. Meigs, sitting with a jury. A verdict for plaintiff was rendered in the sum of $2,500, and judgment entered on the verdict. A motion for new trial was heard before Hon. Wm. E. Carroll, Judge Meigs having been disqualified. The motion was granted upon the following condition: "Unless the plaintiff, within five (5) days after notice of the order remits and agrees to accept in satisfaction of said judgment, as and for the cash value of the property insured at the date of its destroyal by fire, the sum of $900; in which event and upon the satisfaction of said judgment this cause shall not be held for further or other proceedings." This appeal was taken by plaintiff from that order.

At the time of the arguments in this court, defendant presented a motion to strike from the transcript all of what appears

to be the stenographer's report of the evidence introduced at the trial, on the ground that it was not settled in a bill of exceptions as provided in section 9390, Revised Codes 1921, and does not contain a certificate of the court as required by section 9402, Id.

Counsel for plaintiff assert that defendant has waived the right to object to the record on appeal. With this we agree. Section 9747 provides: "All objections to the record and brief of appellant shall be deemed waived unless a motion to dismiss is made because thereof, except such as will prevent a fair hearing, consideration, and decision of the appeal on its merits; and as to any such objection the court may, in its discretion, permit a compliance with the provision of the law or rule of court violated, within such time and upon such terms as may be just." As hereinbefore stated, the motion under consideration was not filed until the day of the argument. It failed to meet the requirements of rule 14, subdivision 3, of this court.

Counsel for both parties in their briefs treated the record as correctly setting forth the evidence. No contention is now made that the testimony is not accurately set forth in the record.

The facts in this case are not substantially different from those appearing in the case of *Sevanin* v. *Chicago etc. Ry. Co.*, 62 Mont. 546, 205 Pac. 825, wherein this court held that there had been a waiver of objections to the transcript, and said: "To take any other view than that of considering the transcript would be chasing a shadow at the expense of letting the substance escape." The motion to strike is accordingly denied.

The several assignments of error in plaintiff's brief raise the ▮ question of the correctness of the court's conditional order granting a new trial. It is contended by plaintiff that the evidence does not justify the action of the court in reducing the amount of the verdict from $2,500 to $900. In considering this question the same presumptions do not attend the act of the judge who granted the motion as if granted by the judge who tried the case. Judge Carroll, not having seen nor

heard the witnesses, was governed in his consideration of this case by the same rules which govern this court on appeal. (*Marcellus* v. *Wright*, 65 Mont. 580, 212 Pac. 299.) If there is substantial evidence in the record supporting the verdict of the jury, its verdict should not be reduced and the judgment of the judge, who neither saw nor heard the witnesses, substituted for that of the jury, more especially so where, as here, there was no evidence upon which to base the order made by Judge Carroll conditionally granting the new trial, as hereinafter pointed out.

The record discloses that according to the terms of the policy the house was insured for $1,500, the furniture for $1,200, and the barn for $300. It limited the liability of the defendant to the actual cash value of the property at the time of loss or damage, and it also provided that the liability of the defendant should not exceed the cost of repairing or replacing the property with material of like kind and quality. It also gave the defendant the option, within thirty days after the receipt of proof of loss, to repair, rebuild, or replace the property lost or damaged with other of like kind or quality. This option was not exercised by the defendant. The policy was issued on January 6, 1927, for a term of three years. All of the property was completely destroyed by fire on March 5, 1927. Defendant admitted that notice of loss was given to it as provided in the policy.

On the question of the value of the property the record discloses the following evidence: The plaintiff testified that he paid $1,800 for the house, lot, and barn and that he thought the buildings alone were worth $2,000. The buildings were built in 1917. The deed to the property recited a consideration of $1,800. He testified also that at the request of the adjusters of the defendant he went to a representative of the Monarch Lumber Company to find out what it would cost to replace the house and was advised that it would cost twenty-three or twenty-four hundred dollars, more or less. He testified that he paid $1,188 for the furniture. He bought the

buildings in October, 1926, and stated that they, as well as the furniture, were in as good condition at the time of the fire as when he bought them. An agent of the defendant solicited the insurance and was out to plaintiff's place for that purpose, was in the house, and had an opportunity to see the furniture.

Joe Karaffa, a contracting carpenter, stated that he was familiar with the buildings in question and that he had made an estimate of the cost of constructing the buildings, and said it would cost between $2,700 and $3,000.

The evidence offered by the defendant on the issue of the value of the property was as follows: John Nemec testified that plaintiff bought the house, lot, and barn in question from him and paid $1,600 in cash for the property and gave him a credit of $200 for groceries. Mary Nemec testified to the same effect. Harold Mady, the county assessor, testified that the lot on which the buildings in question were situated was assessed for the year 1927 to John Nemec at the value of $54 and the house for $400. Paul Asich testified that he sold the furniture and fixtures to plaintiff for $1,188. Evidence of the price paid for the property, less depreciation, if any, between the time of the purchase and the loss, was properly admitted to prove the value of the property at the time of the loss. (*Holter Lumber Co.* v. *Fireman's Fund Ins. Co.*, 18 Mont. 282, 45 Pac. 207.)

There is no foundation in the evidence to warrant the action of Judge Carroll in reducing the verdict of the jury from $2,500 to $900, or in granting a new trial on the ground of excessive damages.

Defendant in its brief, relying upon section 9751, Revised Codes 1921, assigns twenty-one cross-assignments of error, and contends that the motion for new trial should have been granted on other grounds than those assigned by Judge Carroll. Plaintiff contends that, since the order in question is not a general but is a special one, the only question reviewable on this appeal is that of the sufficiency of the evidence to support the verdict on the issues of damages. This court has decided.

this question adversely to the contention of plaintiff, in the case of *Ebaugh* v. *Burns*, 65 Mont. 15, 210 Pac. 892. Under that decision, if the motion for new trial should have been sustained on any of the grounds specified in the motion, this court will not disturb the order granting it.

The first cross-assignment predicates error upon refusal of ▉ the court to permit defendant's counsel to ask plaintiff on cross-examination how Bob Klasner came to be present at the time of the execution of the deed to the property in question. It appears that Bob Klasner was a witness to the execution of the deed conveying the house, lot, and barn to the plaintiff. Defendant contends that this question was proper in view of the answer, which denies plaintiff's ownership of the property.

In our opinion, the objection to the question was properly sustained. How Klasner happened to be present at the time of the execution of the deed had no bearing upon the question of the ownership of the property. The deed was properly ▉ acknowledged before Howard Bennett, a notary public. It was not necessary to its validity that it be signed by a witness. Furthermore, the defendant's witnesses, John and Mary Nemec, the grantors named in the deed, testified on behalf of the defendant that they actually sold the property to plaintiff and executed the deed in question. Also, Klasner was called as a witness for the defendant and testified that he was in Bennett's office at the time the deed was executed; that he brought the parties there in his car at the request of plaintiff. Obviously, then, the defendant was not prejudiced by the refusal of the court to permit the question to be answered.

The second cross-assignment assigns error in the refusal of the court to permit an offer of proof on cross-examination of plaintiff. The question asked was: "How did he [Bob Klasner] come to sign this deed as a witness?" The court sustained an objection to this question. A request was made to present an offer of proof, and this was denied. An offer of ▉ proof on cross-examination need not be made in order

to preserve the right to urge error on the exclusion of evidence. (*Herzig* v. *Sandberg*, 54 Mont. 538, 172 Pac. 132; *Budd* v. *Northern Pac. Ry. Co.*, 59 Mont. 238, 195 Pac. 1109.) The situation is not altered by the offer of proof.

If the objection to the question should not have been sustained, then the right of cross-examination was improperly restricted, and no offer of proof was necessary. The question resolves itself into this: Should the defendant have been permitted to ask the plaintiff on cross-examination how Bob Klasner happened to sign the deed as a witness? What has been said in support of our view that there is no merit in the first cross-assignment applies equally to this one.

Cross-assignments of error 3, 4, and 5 relate to the admission of evidence on cross-examination of W. G. Brook, state fire marshal, as to whether he took any action against plaintiff with reference to the fire and whether he made complaint to the county attorney. In answer to these questions the witness stated that he had not filed a complaint of any kind against the plaintiff, but that he was not through with his investigation, and also that he had learned that the county attorney was employed by plaintiff to bring this action. We fail to see wherein the defendant has been prejudiced by the admission of this evidence.

Cross-assignment of error numbered 6 predicates error upon the action of the court in sustaining objections to an offer of proof by the witness Comings. It appears that Comings was in charge of the Moon insurance agency, which wrote policies of insurance for the defendant. Joe Peticia was a solicitor of insurance for the Moon agency. The offer of proof sought to elicit that the reason why the witness discharged Peticia as an insurance solicitor was because many policies which Peticia wrote were the subjects of fire loss immediately or soon after they were written, and that all of the policies held by the Moon agency were canceled in and about Stockett and Sand Coulee shortly after the fire involved in this action. Obviously, under the facts of this case, this offered testimony

was properly excluded. The fact that other policies were canceled would have no bearing upon the liability of the defendant under the policy involved in this case. What transpired immediately preceding the offer of proof as disclosed by the record shows that the court would have permitted such evidence later in the case, had there been a prima facie showing of a conspiracy; but, as hereafter pointed out, no such showing was made.

Cross-assignments numbered 7, 8, and 9 relate to the exclusion of evidence intended to show that other buildings sold by the witness Klasner in the neighborhood of plaintiff's property, covered by insurance, had burned. It is contended by defendant that the questions were proper under the answer, which charges plaintiff and Klasner with entering into a conspiracy for the purpose of defrauding the defendant. A prima facie case of conspiracy must be shown before acts of one alleged co-conspirator are admissible against the other. (*Hitchman Coal Co.* v. *Mitchell*, 245 U. S. 229, 62 L. Ed. 260, 38 Sup. Ct. Rep. 65, Ann. Cas. 1918B, 461, L. R. A. 1918C, 497; *Schallert* v. *Boggs* (Tex. Civ. App.), 204 S. W. 1061.) The witness was permitted to state that a house which he sold to plaintiff in 1925 had burned.

Evidence showing that property sold by the witness to Peticia or others than the plaintiff also burned was not admissible until there had been a prima facie showing of a conspiracy. The court indicated that upon a proper showing the evidence offered would be admitted later. It was not sought to show that plaintiff had any connection with the burning of any of the property. The conspiracy charge was not proved. At the conclusion of all the evidence that charge was stricken from the answer for want of proof. The court did not err in sustaining the objections to the questions regarding the burning of property in which plaintiff had no interest and with the burning of which he was in no manner connected.

On principle, this case is the same as that of *Grote* v. *Blakely*, 204 Ky. 410, 264 S. W. 1055, where the court said: "The

plaintiff offered to show that there was a similar party which went out on June 24th, or nearly three weeks after the assault on Grote. This evidence was properly rejected. What the second party did threw no light on what the first party did. The two parties were not composed of the same men, although some men in the first party were in the second.''

Furthermore, if such offered evidence had been admitted it would have been subject to a motion to strike at the close of defendant's case, and obviously the defendant was not prejudiced by excluding it.

By cross-assignment numbered 10 error is predicated upon the giving of instruction No. 2. This instruction contains abstract statements of statutory law governing the rights and liabilities of the parties to an insurance contract. No contention is made that it does not correctly state the law. Objection is based upon the ground that abstract propositions of law should not be given to the jury. Where the facts are few and simple, as in this case, it is not reversible error to give an instruction stating abstract legal principles. (*Kirk* v. *Montana Transfer Co.*, 56 Mont. 292, 184 Pac. 987.)

By cross-assignment numbered 11 defendant complains of the giving of instruction No. 10. The portion of this instruction against which the attack is directed is as follows: ''You are further instructed that you have no right to disregard the testimony of a witness where such testimony is not contradicted and such witness has not been impeached.'' Contention is made that the instruction does not advise the jury that they may consider the character of the testimony and the manner in which the witnesses testify. But the instructions must be considered as a whole. The jury was so advised in this case by instruction No. 14A.

Instruction No. 13, which was given without objection, is as follows: ''If the jury shall believe that any witness who has testified in this case has wilfully and intentionally testified falsely about any material matter in the case, the jury are at liberty to disregard any or all of the testimony of such witness,

except in so far as the same may be corroborated by other credible evidence.''

Instruction No. 14 is as follows: "The jury are the sole judges of the credibility of the witnesses and of the weight and value to be given their testimony. In determining as to the credit you will give to a witness, and the weight and value you will attach to a witness' testimony, you should take into consideration the character of the witness; the conduct and appearance of the witness upon the stand; the interest of the witness, if any, in the result of the trial; the motives actuating the witness in testifying; the witness' relation to, or feelings for or against either party; the probability or improbability of the witness' statements; the opportunity the witness had to observe and to be informed as to matters respecting which such witness gives testimony; and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. All these matters being taken into account with all the other facts and circumstances given in evidence, it is your province to give to each witness such credit, and the testimony of each witness such value and weight as you deem proper.''

When a single paragraph, standing alone, is erroneous, yet ▓▓ if qualified by other instructions and altogether the instructions fairly submit the case to the jury, the verdict should not be disturbed on that account. (*Surman* v. *Cruse*, 57 Mont. 253, 187 Pac. 890.)

Cross-assignments 13 and 14 predicate error upon certain ▓▓ statements made by the court relative to the duties of the state fire marshal. No exception was taken to the statements, and no request was made to have the jury instructed to disregard them; hence, if error was committed, it was not preserved for review by this court.

Cross-assignments 12 and 15 are so related that they will be ▓▓ treated together. Number 15 is based upon the affidavit of J. W. Freeman, attorney for the defendant, used on motion for new trial. This affidavit sets out that the judge

in making certain rulings during the trial exhibited a high degree of nervousness and by his actions appeared to be incensed against the defendant and its attorney and would at times shake his finger at counsel for defendant, loudly tap his desk with a pencil or other object, and talk in a loud and apparently angry manner, and that affiant was in fear of being fined for contempt of court. It is set forth in the affidavit that this conduct was apparently for the purpose of endeavoring to influence the jury in favor of plaintiff and against the defendant, and that because of this conduct on the part of the judge the defendant was prevented from having a fair and impartial trial.

The matter complained of by cross-assignment No. 12 is one of the rulings made by the court in the manner recited in the affidavit referred to and relates to the following remark made by the judge in speaking of the admissibility of evidence concerning the plaintiff's occupation: "It don't make any difference what he was, if he had the stuff [referring to certain articles of furniture alleged to have been destroyed by the fire]. A miner might like to have some of those things as well as anybody else." The court, however, instructed the jury to disregard the remarks, and were it not for the conduct and demeanor of the judge at the time of making the remarks as set forth in the affidavit, the mischief might thus have been cured by admonishing the jury to disregard them. (*Conway* v. *Monidah Trust,* 51 Mont. 113, 149 Pac. 711.)

It remains but to determine whether the conduct and demeanor of the judge when this and other rulings were made as disclosed by the affidavit were such as to have prevented the defendant from having a fair trial.

The matters recited in the affidavit, it should be noted, are uncontradicted. Such conduct borders closely upon reversible error and ought not to be encouraged. While we do not approve of the conduct and demeanor of the trial judge as thus disclosed, yet from the facts appearing in the affidavit we are not able to say that Judge Carroll was not justified in holding

that the defendant was not prevented from having a fair and impartial trial entitling it to a new trial by reason of the misconduct set forth in the affidavit. From a careful review of the entire evidence in the case we are not able to say that the objectionable conduct of the trial judge contributed to the result reached by the jury. Under no possible view of the evidence in the case could the jury have found for the defendant; and neither was there warrant in the evidence for a verdict in any less amount than that found by the jury.

Cross-assignment No. 16 is also based upon the same affidavit, setting forth that the attorney for the plaintiff misquoted the evidence in his argument to the jury. The record fails to disclose any objection or exception to the conduct or statements of plaintiff's attorney in these particulars during the course of the trial and no request was made to instruct the jury relative thereto. Hence these questions are not properly before us for review. (*State* v. *Stevens,* 60 Mont. 390, 199 Pac. 256; *State* v. *Smart,* 81 Mont. 145, 262 Pac. 158; 46 C. J. 109.)

The remaining cross-assignments present one or more of the questions already discussed and require no further consideration.

The action of Judge Carroll in granting the conditional order of new trial is reversed, and the verdict and judgment are permitted to stand.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

Rehearing denied March 6, 1929.